TAGGED OPINION



**ORDERED in the Southern District of Florida on June 7, 2021.**

_____
**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

KARLENE S. PARKER                    Case No. 21-10619-SMG

    Debtor.                          Chapter 13
_____/

### MEMORANDUM OPINION AND ORDER DETERMINING ESTATE'S INTEREST IN PROPERTY SOLD AT PREPETITION EXECUTION SALE

Karlene S. Parker filed this Chapter 13 bankruptcy case after a sheriff's execution sale of real property she owned, but before the sheriff delivered a sheriff's deed to the purchaser. Because the deed had not been delivered as of her bankruptcy petition date, she contends the real property is property of her bankruptcy estate, and that the automatic stay prevented the sheriff from issuing the deed to the purchaser postpetition. Creditor Financial Asset Recovery Corp ("FARC") and purchaser Patrick's Custom Painting, however, both argue that the real property is not property

of the estate because the execution sale was completed – and title passed to Patrick's Custom Painting – at the conclusion of the execution sale, upon payment of the purchase price. To determine the estate's interest in the real property as of the petition date – and the effect of the issuance of a sheriff's deed postpetition – the Court must examine Florida law on execution sales and Federal bankruptcy law on property of the estate and the automatic stay, as applied to the facts of this case.

## I.    Facts.

The material facts are undisputed. On June 21, 2001, creditor First Select, Inc. ("First Select") obtained a default final judgment for $7,006.90 against Ms. Parker in the County Court in and for Broward County, Florida (the "County Court"), bearing interest at 11 percent per annum (the "Default Final Judgment"). First Select recorded the Default Final Judgment in the official records of Broward County, Florida on July 18, 2001. The Default Final Judgment has since been re-recorded and assigned to FARC.

On June 14, 2018, the County Court issued a writ of execution in respect of the Default Final Judgment. A few months later, then-Broward County Sheriff Scott J. Israel issued a Notice of Sheriff's Levy ("Notice of Levy"). The Notice of Levy stated that on October 23, 2018, a deputy sheriff levied upon all of the rights, title, and interest of Ms. Parker in and to the real property located at 2861 SW 88 Avenue, Miramar, FL 33025 (the "Real Property"), in order to satisfy the Default Final Judgment. The Notice of Levy also indicated that if the Default Final Judgment was not satisfied, the sheriff would sell the Real Property.

2

Sheriff Israel then issued a Notice of Sheriff's Sale, which scheduled an execution sale of the Real Property for January 8, 2019. For reasons not clear from the record, that sale never occurred. Then on November 30, 2020, new Broward County Sheriff Gregory Tony issued a second Notice of Sheriff's Sale (the "Second Sale Notice"), scheduling an execution sale for January 12, 2021. This execution sale went forward as scheduled, and Patrick's Custom Painting was the highest bidder for the Real Property at $45,000.00, which it paid at the conclusion of the auction. After payment in full of FARC's Default Final Judgment (with all accrued interest), as well as all costs and expenses associated with the execution sale, a surplus of $21,711.06 was returned to Ms. Parker.[1]

Ms. Parker then filed this bankruptcy case on January 25, 2021 (the "Petition Date"). Two days later – on January 27, 2021 – Sheriff Tony issued a sheriff's deed to Patrick's Custom Painting (the "Sheriff's Deed") relating back to the date of the execution sale, January 12, 2021. The Sheriff's Deed states, in relevant part, that the sheriff "hath granted, bargained, sold and conveyed, and by these presents doth grant, bargain, sell and convey unto Patrick's Custom Painting . . . all the estate, right, title and interest, which [Ms. Parker] had on the day of 12th day of January A.D., 2021, or at any time afterwards, of, in and to" the Real Property. Shortly thereafter, Ms. Parker filed her *Motion for Clarification that 88th Avenue is Property of the Bankruptcy Estate*[2] (the "Motion").

---

[1] ECF No. 40, ¶ 22.
[2] ECF No. 15.

## II.    Arguments.

Ms. Parker argues that the Real Property is property of her bankruptcy estate under 11 U.S.C. § 541 because the Sheriff's Deed was not issued until after she filed for bankruptcy, and issuance of the deed therefore violated the automatic stay of 11 U.S.C. § 362(a). The bulk of her argument that the sale occurred postpetition is by analogy to Florida foreclosure sales and several cases holding that a foreclosure sale is not complete under Florida law until the state court clerk files a certificate of sale.[3]

FARC filed an initial response[4] in which it argued that the sale occurred on January 12, 2021, when Patrick's Custom Painting paid the $45,000 purchase price to the sheriff at the execution sale. Unlike a foreclosure sale, an execution sale is not subject to a debtor's right of redemption, according to FARC. Thus, the sale is completed upon the conclusion of the auction and payment of the purchase price, and not when the sheriff issues a sheriff's deed.

After a preliminary hearing, the Court requested further briefing and entered a briefing order.[5] Ms. Parker then timely filed a memorandum of law[6] in which she expounded upon the arguments raised in her Motion. FARC and Patrick's Custom Painting timely filed memoranda in opposition to the Motion.[7] Both argued the sale was completed at the conclusion of the auction when Patrick's Custom Painting paid

---

[3] In a footnote to her Motion, Ms. Parker also raised an issue as to service of the Second Sale Notice, but then "concede[d] that is not an issue to be decided by the Court." *Id.* at 2, n.2.
[4] ECF No. 29.
[5] ECF No. 31.
[6] ECF No. 32.
[7] ECF Nos. 40, 41.

the bid price, that title passed to Patrick's Custom Painting at that time, and that the subsequent issuance of the Sheriff's Deed was a ministerial act that related back to the auction date and therefore did not violate the automatic stay. Although the Court's briefing order did not require a reply brief, Ms. Parker nevertheless filed one.[8] Her reply included many of the same arguments from her Motion and her memorandum of law. But this time she also added a substantive argument challenging service of the Second Sale Notice. As discussed below, however, the Court will not consider this argument because Ms. Parker previously waived it, and then impermissibly raised it for the first time in a reply brief.

## III.  Analysis.

The commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case.[9] Those property interests, though, "are created and defined by state law," unless a federal interest requires a different result.[10] To determine what interest (if any) Ms. Parker's bankruptcy estate had in the Real Property as of her Petition Date, the Court must look to Florida law – the law of the state where the Default Final Judgment was entered and enforced, and where the Real Property is located.[11] If the Court determines Ms. Parker had an interest in the Real Property as of the Petition Date, then Federal bankruptcy law would determine whether that interest

---

[8] ECF No. 42.
[9] 11 U.S.C. § 541(a)(1).
[10] *Butner v. U.S.*, 440 U.S. 48, 55 (1979); *Southtrust Bank of Ala. v. Thomas (In re Thomas),* 883 F.2d 991, 995 (11th Cir. 1989).
[11] *In re Caldwell*, 457 B.R. 845, 851 (Bankr. M.D. Fla. 2009).

constituted property of the estate.[12] And if that interest constituted property of the estate, bankruptcy law would likewise dictate whether the postpetition issuance of the Sheriff's Deed violated the automatic stay of Bankruptcy Code section 362(a), which stays, among other acts, (1) the commencement or continuation of a prepetition legal proceeding against the debtor; (2) the enforcement of a prepetition judgment against the debtor or against property of the estate; (3) acts to obtain possession of property of the estate or to exercise control over property of the estate; (4) acts to create, perfect, or enforce a lien against property of the estate; (5) acts to create, perfect, or enforce a prepetition lien against property of the debtor; and (6) acts to collect on prepetition claims against the debtor.[13]

A.    Judgment Collection Under Florida Law.

A determination of what interest (if any) Ms. Parker had in the Real Property as of the Petition Date requires an understanding of Florida judgment collection procedures. Under Florida law, there are multiple ways to collect a money judgment,[14] including by writ of garnishment,[15] by proceedings supplementary,[16] and by execution.[17]

---

[12] *In re Daugherty*, 261 B.R. 735, 738 (Bankr. M.D. Fla. 2000).

[13] 11 U.S.C. § 362(a)(1) – (6).

[14] *See* Fla. R. Civ. P. 1.570(a) ("Final process to enforce a judgment solely for the payment of money shall be by execution, writ of garnishment, or other appropriate process or proceedings.").

[15] Fla. Stat. §§ 77.01 – 77.28.

[16] Fla. Stat. § 56.29.

[17] Fla. Stat. §§ 56.0101 – 56.28.

### 1.    *Judgment Liens.*

One of the first steps is usually to obtain a judgment lien on the judgment debtor's real[18] or personal property.[19] To obtain a judgment lien on real property, the judgment creditor must record a certified copy of the judgement in the official records or judgment lien records of the county in which a judgment debtor's real property is located.[20] To obtain a judgment lien on personal property, a judgment creditor must file a judgment lien certificate with the Florida Department of State.[21] Upon recording, a judgment lien on real property will be valid for an initial period of ten years.[22] That lien may be extended for an additional ten years if it is re-recorded in accordance with Florida Statute § 55.10(2).[23] The judgment lien will expire twenty years after the judgment was entered, or earlier upon satisfaction of the judgment.[24]

Once a judgment creditor obtains a judgment lien, it then has a number of ways to enforce that lien to seek payment of its judgment. One option is to take no action and simply wait for the property to be sold, in which case the judgment lien would be paid if there are sufficient proceeds from the sale to satisfy the lien. Another choice is for the judgment lien creditor to file a new lawsuit to foreclose its judgment

---

[18] *See* Fla. Stat. § 55.10.

[19] *See* Fla. Stat. §§ 55.202, 55.203.

[20] Fla. Stat. § 55.10(1).

[21] Fla. Stat. § 55.202.

[22] Fla. Stat. § 55.10(1).

[23] The record is not clear whether the Default Final Judgment was timely re-recorded and therefore extended for an additional ten years. But Florida Statute § 55.205(1) states that even if the judgment lien had lapsed, the judgment creditor may still "proceed against the judgment debtor's property through any appropriate judicial process." Fla. Stat. § 55.205(1).

[24] Fla. Stat. §§ 55.10(3); 55.081. *See Park Fin. of Broward, Inc. v. Jones*, 94 So. 3d 617, 619 (Fla. 4th DCA 2011) ("a judgment becomes a lien on real property in any county where it is properly recorded for an initial period of 10 years, with the possibility of it being extended for up to 10 years.").

lien and ultimately seek a judicial sale of the property. Yet another method is to attempt collection through execution.[25]

### 2. Executions.

Execution is a type of final process under Florida law used to enforce a judgment.[26] Florida courts have described "execution" as "'[t]he act of carrying into effect the final judgment or decree of a court; the writ which directs and authorizes the officer to carry into effect such judgment.'"[27] To obtain an execution, a judgment creditor must first record its final judgment,[28] after which it then "may request that the clerk of court issue a writ of execution to satisfy the amount of a judgment."[29] An execution may issue any time during the 20-year life of the judgment on which it is based.[30] Once issued, an execution is valid for the life of the judgment.[31] The writ of execution issued by the clerk of court is "'directed to all and singular sheriffs of the state,' in order to satisfy the amount of the judgment."[32] It may then be used to levy

---

[25] Fla Stat. §§ 56.0101 – 56.28.

[26] *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 839 (Fla. 4th DCA 2001) (citing Fla. R. Civ. P. 1.570).

[27] *Raulerson v. Peeples*, 81 Fla. 206, 208, 87 So. 629, 630 (1921) (quoting Bouvier's Law Dictionary).

[28] Fla. R. Civ. P. 1.550(a).

[29] *Rodriguez v. Supersonic of Fla., Inc.*, No. 20-23459-CIV, 2021 WL 633215, at *2 (S.D. Fla. Jan. 29, 2021), *report and recommendation adopted*, No. 20-23459-CIV, 2021 WL 619467 (S.D. Fla. Feb. 17, 2021) (citing Fla. Stat. § 56.021); *see also* Fla. R. Civ. P. 1.550(a) ("Executions on judgments shall issue during the life of the judgment on the oral request of the party entitled to it or that party's attorney without praecipe.").

[30] *Park Fin. of Broward*, 94 So. 3d at 619; *Corzo Trucking Corp. v. West*, 61 So. 3d 1285, 1288-89 (Fla. 4th DCA 2011).

[31] *Burshan*, 805 So. 2d at 839 (citing Fla. Stat. § 56.021; Fla. R. Civ. P. 1.550(a)).

[32] *Newman v. Ormond*, No. 09-21435-CIV, 2011 WL 2160803, at *2 n.4 (S.D. Fla. June 1, 2011), *aff'd*, 456 F. App'x 866 (11th Cir. 2012) (citing Fla. Stat. § 56.021); *Moss v. Am. Priv. Equity, LLC*, No. 8:18-CV-587-T-23JSS, 2020 WL 7414397, at *2 (M.D. Fla. Oct. 28, 2020).

on different types of property, including real property, goods and chattels, equities of redemption, and stock in corporations.[33]

    3.    *Levies.*

After a judgment creditor obtains an execution, the next step is for the sheriff to levy on the judgment debtor's property. A sheriff is obligated to levy on any property specifically described in a writ of execution.[34] Where no property is specifically described in the writ, the sheriff must levy upon any property in the defendant's possession that is described in instructions for levy, or upon specific instructions from the plaintiff or its attorney, any property registered to the defendant either on current county tax rolls or under any law of the United States or of the state.[35] Levy instructions delivered to the sheriff must state the balance due on the writ.[36] When making a levy request, the levying creditor must deliver to the sheriff an affidavit required by Florida Statute § 56.27(4) (the "Execution Affidavit"). For a levy on real property, the Execution Affidavit must include:

> an attestation by the levying creditor or the levying creditor's attorney of record that he or she has reviewed the records of the clerk of the court of the county where the property is situated, or that he or she has performed or reviewed a title search, and that the information contained in the affidavit, including a disclosure of all judgment liens, mortgages, financing statements, tax warrants, and other liens against the real property, based on that review or title search is true and correct.[37]

---

[33] Fla. Stat. § 56.061.
[34] Fla. Stat. § 30.30(1).
[35] *Id.*
[36] Fla. Stat. § 30.30(1)(b).
[37] Fla. Stat. § 56.27(4)(a).

4.    *Execution Sales.*

After the sheriff levies on the judgment debtor's property, the sheriff (or his deputy) will then conduct an execution sale of the levied property.[38] Execution sales in Florida take place without judicial supervision,[39] and with the sheriff acting only "in a ministerial capacity."[40] Florida Statute § 56.21 sets forth the procedures for an execution sale. The statute requires that notice of an execution sale must be given by advertisement once each week for four successive weeks in a newspaper published in the county in which the sale is to take place.[41] The sale date for real or personal property must be not more than 30 days after the first advertisement appears.[42] On or before the date of the first publication or posting of the notice of an execution sale, the sheriff must also provide a copy of the notice by certified mail to the judgment debtor's attorney of record or, if there is no attorney of record, then to the judgment debtor at his or her last known address.[43] The Execution Affidavit must be provided to the sheriff before the first publication or posting of the sale notice.[44] And when levying on real property, notice of the levy and execution sale, as well as a copy of the Execution Affidavit, must be provided to the property owner of record, plus each other

---

[38] *See State ex rel. Raulerson v. Sloan*, 134 Fla. 632, 634–35, 184 So. 128, 130 (1938) ("An execution sale is a sale of property by a sheriff or his deputy, in virtue of his authority as an officer holding process.").

[39] *In re King*, 463 B.R. 555, 566 (Bankr. S.D. Fla. 2011); *Sloan*, 134 Fla. at 635.

[40] *See McAlice v. Andersen*, 403 So.2d 563, 565 (Fla. 3d DCA 1981) (citing *Camp v. Moseley*, 2 Fla. 171 (1848)).

[41] Fla. Stat. § 56.21.

[42] *Id.*

[43] *Id.* This requirement applies even in the case of judgments entered by default. *Id.*

[44] Fla. Stat. § 56.27(4).

person holding a mortgage or other lien against the real property as disclosed in the Execution Affidavit.[45]

The execution sale must take place at the time, date, and place advertised in the notice of the sheriff's sale, on any day of the week except Saturday and Sunday.[46] At the sale, the sheriff will sell the property to the highest bidder, who "acquires no title to the thing purchased until payment of the purchase price."[47] Upon payment of the purchase price and the cost of the deed or bill of sale, Florida Statute § 56.25 then requires the officer making the sale to execute and deliver to the purchaser a deed or bill of sale to the property.[48] There is a presumption under Florida law that a sheriff has properly conducted an execution sale.[49] But, a bill of sale may be set aside if a sheriff gives it to the purchaser without receiving payment of the purchase price,[50] or if the statutory notice requirements have been "ignored."[51]

### 5. *No Right of Redemption in Execution Sales.*

An important aspect of execution sales under Florida law is that there is no right of redemption. A right of redemption – which is sometimes called an "equity of redemption" – "generally refers to the right of an entity that has granted or suffered a lien on its property to pay off the debt and recover or redeem the property."[52] Under

---

[45] Fla. Stat. § 56.21.

[46] Fla. Stat. § 56.22(1).

[47] *Flagship State Bank of Jacksonville v. Carantzas*, 352 So. 2d 1259, 1262–63 (Fla. 1st DCA 1977) (citing 33 C.J.S. Executions s 289 (1942)).

[48] Fla. Stat. § 56.25.

[49] *Quinn R. Barton, Inc. v. Johnson*, 143 Fla. 245, 249, 196 So. 489, 491 (1940).

[50] *Carantzas*, 352 So. 2d at 1262–63 (citing 30 Am. Jur. 2d, Executions, section 382 (1967)).

[51] *Wofford v. Dykes*, 67 Fla. 118, 120, 64 So. 451, 452 (1914).

[52] 5 COLLIER ON BANKRUPTCY ¶ 541.04 (16th ed. 2021). A right of redemption – if one exists under applicable non-bankruptcy law – is a property interest that becomes property of the bankruptcy estate

Florida law, that right is codified in Florida Statute § 45.0315, which provides that a mortgagor (or any subordinate interest holder) may cure a mortgagor's indebtedness and prevent a foreclosure sale by paying the judgment amount, before the later of the filing of a sale certificate or a court-ordered deadline in the foreclosure judgment.[53] But, the right of redemption applies only with respect to a judicial sale (e.g., a foreclosure sale);[54] it does not apply to an execution sale.[55]

### 6.    *Other Differences Between Execution Sales and Judicial Sales.*

Execution sales differ from judicial sales in several other ways as well.[56] In an execution sale, "the sheriff gets his authority by virtue of the execution and is guided in the sale by the law rather than by the court."[57] An execution sale also requires no confirmation unless required by statute.[58] A judicial sale, on the other hand, is conducted by the clerk of the court by court order, disposes of specifically described property as a result of judicial proceedings,[59] and must be confirmed by the court.[60] After the foreclosure sale, the clerk must complete and file a certificate of sale.[61] Importantly, once the clerk files a certificate of sale, the right of redemption under

---

under 11 U.S.C. § 541 upon the filing of a bankruptcy petition. But, importantly, the underlying real property itself that is subject to the redemption right would not be property of the estate. *Id.*

[53] Fla. Stat. § 45.0315.

[54] *Id.* ("Otherwise, there is no right of redemption.").

[55] Fla. Stat. § 45.031(9) ("This section shall not apply to property sold under executions.").

[56] *See Sloan*, 134 Fla. at 634–35; *see also Bankers Tr. Co. v. Edwards*, 849 So. 2d 1160, 1162 (Fla. 1st DCA 2003) (Ervin, J., dissenting) (describing the differences between judicial sales and execution sales in a comprehensive chart).

[57] *Sloan*, 134 Fla. at 634-35.

[58] *Id.*

[59] *Bankers Tr.*, 849 So. 2d at 1162.

[60] *Sloan*, 134 Fla. at 634-35; Fla. Stat. § 45.031.

[61] Fla. Stat. § 45.031(4).

Florida Statute § 45.0315 is extinguished.[62] If no objections to the sale are filed within 10 days after the certificate of sale is filed, then the clerk must complete and file a certificate of title.[63] Upon filing the certificate of title, "the sale shall stand confirmed, and title to the property shall pass to the purchaser named in the certificate without the necessity of any further proceedings or instruments."[64] The clerk must then record the certificate of title.[65]

B.    Conveyance of Real Property Under Florida Law.

With this explanation of Florida judgment collection procedures, the next step to determine what interest (if any) Ms. Parker had in the Real Property as of the Petition Date is to understand how real property is conveyed under Florida law. Florida Statute § 689.01 sets forth the following requirements:

> No estate or interest of freehold, or for a term of more than 1 year, or any uncertain interest of, in, or out of any messuages, lands, tenements, or hereditaments shall be created, made, granted, transferred, or released in any manner other than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring, or releasing such estate, interest, or term of more than 1 year, or by the party's lawfully authorized agent, unless by will and testament, or other testamentary appointment, duly made according to law; and no estate or interest, either of freehold, or of term of more than 1 year, or any uncertain interest of, in, to, or out of any messuages, lands, tenements, or hereditaments, shall be assigned or surrendered unless it be by instrument signed in the presence of two subscribing witnesses by the party so assigning or surrendering, or by the party's lawfully authorized agent, or by the act and operation of law; provided, however, that no subscribing witnesses shall be required for a lease of real property or any such instrument pertaining to a lease of real property. No seal shall be necessary to give validity to any

---

[62] Fla. Stat. § 45.0315; *Garcia v. Rivas*, Case No. 15-Civ-21274-COOKE, 2016 WL 11549646, at *2 (S.D. Fla. Mar. 30, 2016) (citing *In re Jaar*, 186 B.R. 148, 154 (Bankr. M.D. Fla 1995)).
[63] Fla. Stat. § 45.031(5).
[64] Fla. Stat. § 45.031(6).
[65] *Id.*

> instrument executed in conformity with this section. Corporations may execute any and all conveyances in accordance with the provisions of this section or ss. 692.01 and 692.02.[66]

In addition to these statutory provisions, Florida courts have identified certain other requirements to validly convey real property under Florida law.[67] First, the deed or other conveyance instrument "must be supported by at least nominal consideration."[68] Next, the deed or other instrument must identify or describe the real property.[69] And finally, the deed or other instrument must be delivered to the grantee.[70] Thus, the requirements to validly convey real property under Florida law can be distilled down to the following five elements:[71]

> (1) a written instrument conveying ownership of the real property;

> (2) the written instrument must be executed by the grantor and witnessed by two subscribing witnesses;

> (3) the written instrument must be supported by consideration;

> (4) the written instrument must sufficiently describe the real property; and

> (5) the written instrument must be delivered to the grantee.

Under Florida law a deed takes effect upon delivery, and nothing passes until delivery.[72] Indeed, Florida cases hold that "[a] deed is essentially worthless as an

---

[66] Fla. Stat. § 689.01(1); *see also U.S. v. Viomar Co.*, 616 F. Supp. 24, 26 (S.D. Fla. 1985) ("It is, of course, black letter law that title to land may not be transferred orally.") (citing *Watrous v. Morrison*, 33 Fla. 261, 14 So. 805 (1894)).

[67] *Caldwell*, 457 B.R. at 851-52.

[68] *Id.* at 852 (citing *Kingsland v. Godbold*, 456 So. 2d 501, 502 (Fla. 5th DCA 1984)). A recitation of consideration in the deed raises a presumption of supporting consideration. *Id.* (citing *Kingsland*, 456 So. 2d at 502).

[69] *Id.* (citing *Simons v. Tobin*, 89 Fla. 321, 104 So. 583, 584 (1925)).

[70] *Id.* (citing *McCoy v. Love*, 382 So. 2d 647, 649 (Fla. 1979) ("Without delivery, nothing passes to the grantee.")).

[71] *Id.* at 849.

[72] *Berry v. Berry*, 992 So. 2d 898, 900 (Fla. 2d DCA 2008) (citing *McCoy*, 382 So.2d at 649).

instrument of title without delivery, even if delivery may have been intended but failed due to an accident."[73] But, Florida law does recognize constructive delivery of a deed; actual manual delivery is not always required.[74] To determine whether a deed has been delivered, Florida courts look to "whether the grantor retained the 'locus poenitentiae,' or opportunity to change his or her mind."[75] If the grantor retained the opportunity to change his or her mind, then there is no delivery.[76] But if the grantor "parts with the control of the deed, or evinces an intention to do so, and to pass it to the grantee, though he may retain the custody or turn it over to another, or place it upon record, the delivery is complete."[77] The grantor's intention is therefore the determining factor.[78] Did the grantor intend to reserve the right to change his or her mind?[79] If not, then constructive delivery of a deed may suffice to transfer title under Florida law.

One reported decision applying Florida law, albeit in the context of a federal habeas corpus proceeding, demonstrates how courts have applied the concept of constructive delivery. In *Frances v. Tucker*,[80] a defendant convicted of burglary argued he was not criminally liable because he owned the condominium units he was accused of burglarizing at the time of the crime. The state court record from which

---

[73] *Sargent v. Baxter*, 673 So. 2d 979, 980 (Fla. 4th DCA 1996) (citing *Lance v. Smith*, 123 Fla. 461, 468, 167 So. 366, 369 (1936); *Parramore v. Parramore*, 371 So.2d 123, 124 (Fla. 1st DCA 1978)).
[74] *Id.*
[75] *Id.* (citing *Smith v. Owens*, 91 Fla. 995, 1002, 108 So. 891, 893 (1926)).
[76] *Id.*
[77] *Id.*
[78] *Id.*; *Howarth v. Moreau*, 430 So. 2d 576, 578 (Fla. 5th DCA 1983).
[79] *Sargent*, 673 So. 2d at 980 (citing *Parramore*, 371 So.2d at 124).
[80] No. 3:09CV411/MCR/EMT, 2012 WL 3887516, at *23 (N.D. Fla. Feb. 6, 2012), *report and recommendation adopted*, No. 3:09CV411/MCR/EMT, 2012 WL 3888222 (N.D. Fla. Sept. 6, 2012).

the Magistrate Judge quoted in her Report and Recommendation noted that although the purchaser at the sheriff's execution sale did not receive a sheriff's deed until the day after the execution sale, the purchaser purchased the condominiums "[a]t the conclusion of the Sheriff's sale on December 6, 2006 . . . *and became entitled to a deed*."[81] "In other words, once the [purchaser] paid the purchased [*sic*] price of $1,000, any ownership interest the Defendant had in the condominiums was extinguished. All of the Defendant's interest in the properties had been conveyed to the [purchaser]."[82] The defendant was therefore not the owner of the property at the time of the burglary.[83] Although this decision did not use the term "constructive delivery," its analysis is consistent with the notion that there may be constructive delivery of a sheriff's deed at the conclusion of an execution sale, even if the actual, physical deed was not delivered until later.

     C.   <u>Application of Florida Law</u>.

In Ms. Parker's case, there was a written instrument conveying ownership of the Real Property: the Sheriff's Deed. The Sheriff's Deed was executed by the grantor (Sheriff Gregory Tony) and was subscribed by two witnesses. The Sheriff's Deed was also supported by consideration – the $45,000 purchase price paid by Patrick's Custom Painting – as recited in the Sheriff's Deed. And the Sheriff's Deed included the specific legal description of the Real Property. So the only issue here is as to

---

[81] *Id.* (emphasis in original) (citing Fla. Stat. § 56.25).
[82] *Id.*
[83] *Id.*

16

delivery of the Sheriff's Deed to Patrick's Custom Painting, which occurred on January 27, 2021 – two days after the Petition Date.

But Florida Statute § 56.25 *requires* a sheriff to execute and deliver a deed to the purchaser at an execution sale after payment of the purchase price and the cost of the deed. The sheriff has no discretion under the statute to not issue the deed, and therefore, as a matter of law, he cannot change his mind. The mandate of Florida Statute § 56.25 thus leads to the conclusion that the Sheriff's Deed here was constructively delivered to Patrick's Custom Painting at the conclusion of the execution sale, upon payment of the purchase price and related costs. Therefore, under Florida law, Ms. Parker had no legal or equitable interest in the Real Property as of the Petition Date, because all steps necessary to convey title to Patrick's Custom Painting under Florida law had already been accomplished.

D.    Federal Bankruptcy Law.

Having determined that under Florida law Ms. Parker had no legal or equitable interest in the Real Property as of the Petition Date, the Court must now turn to Federal Bankruptcy law to determine whether any interest in the Real Property was property of her bankruptcy estate under 11 U.S.C. § 541, and whether issuance of the Sheriff's Deed violated the automatic stay of 11 U.S.C. § 362(a). Several reported bankruptcy decisions with similar facts offer helpful guidance to determine these issues.

1.    *Case Law Under the Bankruptcy Code.*

a.    *In re Pulcini.*

In *The Chase Manhattan Bank v. Pulcini (In re Pulcini),*[84] Chase Manhattan Bank ("Chase"), which held a mortgage on the debtors' property, obtained a foreclosure judgment and scheduled a sheriff's sale of the property. The debtors then filed a chapter 7 bankruptcy petition, staying the sale. After converting their case to chapter 13, it was dismissed a few months later. The sheriff's sale was rescheduled. This time, the sale occurred and Chase was the highest bidder. It paid the sale price and related costs to the sheriff. But before the sheriff delivered the sheriff's deed to Chase, the debtors filed another chapter 7 bankruptcy case. Chase then moved for relief from the automatic stay to permit it to receive and record the sheriff's deed, and to initiate ejectment proceedings against the debtors, who continued to reside on the property without paying rent.

The court in *Pulcini* began its analysis by noting that "[u]nder Pennsylvania law, the purchaser of real property at a sheriff's sale acquires a vested equitable interest in the property 'at the fall of the auctioneer's hammer.'"[85] Once the sheriff accepts the high bid, "the purchaser acquires a right to a deed upon compliance with the terms of the sale and assumes an obligation to comply with the terms."[86] At that point the purchaser had an "inchoate title" in the real property – an equitable interest

---

[84] 261 B.R. 836 (Bankr. W.D. Pa. 2001).
[85] *Id.*, 261 B.R. at 840 (citing *Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir.1988); *Pa. Co. for Insurances on Lives & Granting Annuities v. Broad St. Hosp.* 354 Pa. 123, 128, 47 A.2d 281, 283 (1946)).
[86] *Id.*, 261 B.R.at 841 (citing *Pa. Co. for Insurances,* 354 Pa. at 127, 47 A.2d at 282).

that would become a "complete title" upon complying with the terms of the sale and issuance of the sheriff's deed.[87] When the deed is later acknowledged and delivered, it merely provides "evidence of the purchaser's title," and "relates back to and takes effect as of the sale date."[88] Applying those legal concepts to the facts of *Pulcini*, the court held that Chase had legal title to the real property as of the conclusion of the auction (and before the second bankruptcy case was filed), because it had fully complied with all the terms of the sheriff's sale as of that time.[89] The court then concluded that the debtors "had neither an equitable interest nor legal title to the property as of the commencement of their bankruptcy case and that it consequently was not included in their bankruptcy estate by virtue of § 541(a)(1) of the Bankruptcy Code."[90]

Having determined the property was not property of the bankruptcy estate, the *Pulcini* court then ruled that the postpetition acknowledgement and delivery of the sheriff's deed was not a violation of the automatic stay.[91] Rather, these "were at most ministerial acts,"[92] which "arose out of laws and/or judicial decrees with such 'crystalline clarity' that nothing was left to the sheriff's discretion or judgment."[93] Because Chase "had fully complied with the terms of sale at which it had purchased

---

[87] *Id.* (citing *Pa. Co. for Insurances*, 354 Pa. at 132, 47 A.2d at 285).

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*; *see also Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 973–74 (1st Cir. 1997) ("A ministerial act is one that is essentially clerical in nature. Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial.").

[93] *Id.* (citing *Soares*, 107 F.3d at 974).

the property, the sheriff had no discretion and no judgment to exercise before acknowledging and delivering the deed to" Chase.[94] The court then concluded that "[m]inisterial acts, even if undertaken postpetition within the context of a judicial or other court proceeding do not violate the automatic stay."[95] But even if the automatic stay did apply, the court held that cause existed under Bankruptcy Code section 362(d) to lift the stay to permit the purchaser to obtain legal title to the real property.[96]

        b.    *In re Rodgers.*

Another similar case is *In re Rodgers*,[97] a case under New York law, where a county taxing authority sold the debtor's real property at a prepetition tax foreclosure sale. Under the terms of the sale, the buyer had to place a ten percent deposit and pay the balance a month later and, upon payment, he would receive a deed. The debtor then filed a chapter 13 petition before the deed was issued. But because the county taxing authority concluded that the debtor's right to redeem the property had expired under New York law, the county accepted the remaining balance due from the buyer, and issued the deed postpetition. The debtor sought to hold the county in contempt for violating the automatic stay and to set aside the transfer of the property to the buyer. The bankruptcy court denied the debtor's motion. On appeal, the district

---

[94] *Id.*
[95] *Id.* (citing *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit),* 217 F.3d 1072, 1080 (9th Cir. 2000); *Soares,* 107 F.3d at 973–74; *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994)).
[96] *Id.* at 841–42 (citing *Bundy v. Donovan (In re Donovan),* 183 B.R. 700, 702 (Bankr. W.D. Pa. 1995); *In re Golden,* 190 B.R. 52, 58 (Bankr. W.D. Pa. 1995)).
[97] 333 F.3d 64 (2d Cir. 2003).

court affirmed that denial. The debtor appealed again, and the Second Circuit framed the issue as "whether, after the sale at public auction, but before completion of payment and delivery of the deed, [the debtor] possessed 'legal or equitable interests' in the property, so that it became part of the bankruptcy estate."[98]

In affirming once again, the Second Circuit noted that under New York law "a tax foreclosure sale occurs when the property is 'struck down' at auction, rather than when the deed is conveyed to the purchaser."[99] The court noted that the sale "extinguishes the debtor's interests in the property, unless a right to redeem exists."[100] But under New York law, the debtor's right to redeem expired at the conclusion of the auction.[101] Because the ability to redeem had therefore been lost before the debtor filed her bankruptcy petition, the Second Circuit quoted the bankruptcy court below and held that "the foreclosed property sold at a public sale is no longer property of the estate for purposes of Section 541."[102]

The debtor had argued that her possession of title as of the petition date was sufficient to find the property to be property of the estate, but the Second Circuit rejected this argument. The "critical inquiry" – according to the Second Circuit – was whether the debtor "had, under state law, any legal or equitable ownership interest that survived the auction."[103] The Second Circuit concluded that "the estate's legal

---

[98] *Id.* at 66.
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *Id.* at 68 (quoting Jan. 10, 2002, Order (No. 01–24220) at 15).
[103] *Id.*

and equitable interests in property rise no higher than those of the debtor," and that her estate included only "property to which the debtor would have a right if the debtor were solvent."[104] Because under New York law she had no legal or equitable interest in the property after the conclusion of the auction, she did not have any legal or equitable ownership in the property as of the petition date.[105]

c.    *In re Foskey*.

*In re Foskey*[106] is yet another case with similar facts, this time under District of Columbia law. In *Foskey*, the District of Columbia sold a debtor's property at a prepetition tax sale, and the purchaser then obtained a default judgment foreclosing the debtor's right of redemption. About two months later, the debtor filed a chapter 13 petition. After the petition was filed, the purchaser paid the taxes owed on the property and sought and obtained a deed in accordance with D.C. law. The purchaser then recorded the deed.

The debtor contended that the purchaser's actions violated the automatic stay and filed a motion seeking authority to sell this property free and clear of any liens. The purchaser responded by filing its own motion for annulment of the automatic stay or a declaration that the stay did not apply to its payment of the taxes, issuance of the deed, or recording of the deed. The bankruptcy court determined that whether the automatic stay was violated depended on what interest, if any, the estate had in

---

[104] *Id.* at 68–69 (citing *First Fidelity Bank v. McAteer,* 985 F.2d 114, 117 (3d Cir. 1993) (citing *In re La. World Exposition, Inc.,* 832 F.2d 1391, 1401 (5th Cir.1987))).
[105] *Id.* at 69.
[106] 417 B.R. 836 (Bankr. D.D.C. 2009), *aff'd sub nom. Foskey v. Plus Properties, LLC,* 437 B.R. 1 (D.D.C. 2010).

the property as of the petition date, and whether the postpetition acts were acts to collect a prepetition debt.[107]

Under D.C. law the purchaser did not immediately acquire title after the auction, and the debtor had a six-month right of redemption, during which he retained ownership and use of the property. But after expiration of that six-month period, the purchaser could foreclose the right of redemption, which was what the purchaser did in *Foskey*. Even that step, though, did not vest legal title in the purchaser under D.C. law. To acquire legal title, the purchaser had to pay the taxes, and then the mayor had to execute and deliver a deed to the purchaser.[108] Thus, under D.C. law the debtor still held legal title (and the right to use of the property) until the deed was delivered to the purchaser.

But, that legal title was "subject to divestment upon payment of the purchase price and issuance of a deed."[109] Importantly, because the bankruptcy estate "cannot possess greater rights or interest in the property than those held by the debtor upon filing, the bankruptcy estate possesses only that limited bundle of post-sale rights."[110] Having lost the right of redemption prepetition, this limited bundle of post-sale rights did not include the ability to prevent the purchaser from acquiring legal title. Accordingly, the purchaser did not violate the automatic stay by exercising its right

---

[107] *Id.* at 838.
[108] *Id.* at 839.
[109] *Id.*
[110] *Id.* at 841 (citing *In re Alpine PCS, Inc.,* No. 08–00543, 2008 WL 5076983, *4 (Bankr. D.D.C. Oct.10, 2008) ("A debtor's property rights do not expand upon the commencement of a case."); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less.")).

to pay the taxes, and the District of Columbia did not violate the automatic stay by fulfilling its "ministerial" duty to issue the deed.[111]

### 2.    Cases Under the Bankruptcy Act.

Although predating the modern Bankruptcy Code, a 1942 Supreme Court decision and a 1935 Fifth Circuit[112] decision – both under the Bankruptcy Act of 1898 (the "Bankruptcy Act") – also offer helpful guidance. In *State Bank of Hardinsburg v. Brown*,[113] the debtor petitioned for relief under the Bankruptcy Act after his property was sold at a foreclosure sale, but before the sheriff executed and delivered a deed to the purchaser. Because the debtor's right of redemption had expired before he petitioned for relief, the Supreme Court held that the property was not within the jurisdiction of the bankruptcy court[114] (the equivalent of not being property of the estate). The Supreme Court also noted that under Indiana law, the sheriff's delivery of a deed to the purchaser was "a ministerial act which he can be compelled to perform."[115]

In *Glenn v. Hollums*,[116] a decision that actually involved two cases, both debtors petitioned for relief under the Bankruptcy Act after foreclosure sales but before issuance of sheriff's deeds (although in one case the sheriff issued a deed the day after the debtor petitioned for relief). Applying Texas law, the Fifth Circuit held

---

[111] *Id.*
[112] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.
[113] 317 U.S. 135 (1942).
[114] *Id.* at 141–142.
[115] *Id.* at 141.
[116] 80 F.2d 555 (5th Cir. 1935).

that a valid judgment, issuance of an execution thereon, a sale thereunder, acceptance of a bid by the sheriff, payment of the costs, and payment of the purchase price in either cash or by credit bid at the execution sale, vested "equitable and superior" title in the purchasers.[117] And, importantly, the court held that "[a] deed from the sheriff is a ministerial act not essential to the investiture of title."[118]

E.    Application of Bankruptcy Law.

Relying primarily on *Jaar*,[119] Ms. Parker argues that under "settled law in Florida," filing a bankruptcy petition before a certificate of sale is filed establishes that the Real Property is property of the debtor's bankruptcy estate and subject to the automatic stay. Ms. Parker is correct that with respect to a *judicial sale* – where there is a statutory right of redemption before a certificate of sale is filed[120] – the right of redemption is property of a debtor's bankruptcy estate. She is also correct that courts in Florida (both federal and state) follow *Jaar*'s holding "that a debtor could cure a default in a home mortgage and reinstate that mortgage through a chapter 13 plan until the clerk of the state court files a certificate of sale."[121] But, she is incorrect that *Jaar* applies here. *Jaar* is based upon the statutory right of redemption set forth in Florida Statute § 45.0315. As discussed above, however, the

---

[117] 80 F.2d at 556.
[118] *Id.*
[119] 186 B.R. at 154.
[120] Fla. Stat. § 45.0315.
[121] *In re Rodriguez,* No. 16-14608-BKC-LMI, 2016 WL 8504994, at *2 (Bankr. S.D. Fla. July 12, 2016) (citing *Iskandar v. Carrera,* 550 B.R. 589, 590 (S.D. Fla. 2015); *In re Fothergill,* 293 B.R. 263, 264 (Bankr. S.D. Fla. 2003); *Shlishley the Best, Inc. v. CitiFinancial Equity Services, Inc.* 14 So.3d 1271, 1275 (Fla. 2d DCA 2009)).

judicial sale procedures that provide for a right of redemption do not apply to execution sales like the sheriff's sale of the Real Property here.

Thus, based on the analyses in *Pulcini*,[122] *Rodgers*,[123] and *Foskey*[124] (as well as *State Bank*[125] and *Glenn*[126]), the Court concludes that the Real Property is not property of Ms. Parker's bankruptcy estate under 11 U.S.C. § 541. Under Florida law, Ms. Parker had no legal or equitable interest in the Real Property as of her Petition Date, even though the Sheriff's Deed had not yet been physically delivered to Patrick's Custom Painting. Moreover, because Florida Statute § 56.25 required the sheriff to undertake the purely ministerial act of delivering the Sheriff's Deed (as to which he had no legal right to "change his mind"), Patrick's Custom Painting had a legal entitlement to issuance of the Sheriff's Deed as of the Petition Date. As such, delivery of the Sheriff's Deed two days after the Petition Date did not violate the automatic stay.[127] Accordingly, with the execution sale having been completed prepetition and FARC having collected in full on its Default Final Judgment, neither the sheriff in discharging his statutory duties, nor Patrick's Custom Painting in accepting the deed to which it was legally entitled, nor any action or inaction by judgment creditor FARC, in any way violated the automatic stay.

---

[122] 261 B.R. 836.

[123] 333 F.3d 64.

[124] 417 B.R. 836.

[125] 317 U.S. 135.

[126] 80 F.2d 555.

[127] *See Rodgers*, 333 F.3d at 68-69; *Foskey*, 417 B.R. at 843; *Pulcini*, 261 B.R. at 841; *see also State Bank*, 317 U.S. at 141-42; *Glenn*, 80 F.2d at 556; *cf. Frances*, 2012 WL 3887516, at *23. But even if delivery of the sheriff's deed did violate the automatic stay, retroactive annulment of the stay would be warranted here to approve issuance of the deed. *Pulcini*, 261 B.R. at 842.

F.     Challenge to the Execution Sale.

Finally, the Court notes that in each of her three briefs, Ms. Parker raised an issue as to service of the Second Sale Notice, contending it was not proper under Florida Statute § 56.21. But in each brief, she also clearly stated that it was "not an issue to be decided by this court."[128] Having three times raised this issue, and then three times stated that the Court need not decide it, Ms. Parker clearly waived this argument. Notwithstanding these waivers, at the end of her reply brief, Ms. Parker then actually proceeded – through three pages of argument – to attack the validity of the sale for allegedly violating the notice provisions of Florida Statute § 56.21. But as an issue substantively raised for the first time in a reply brief (after having been thrice waived), the Court will not entertain this argument.[129]

## IV.   Conclusion.

Because Sheriff Tony's obligation to deliver the Sheriff's Deed to Patrick's Custom Painting was a ministerial act mandated by statute, over which the sheriff had no discretion, the Court holds that the Sheriff's Deed had been constructively delivered to Patrick's Custom Painting before Ms. Parker filed her bankruptcy petition. Ms. Parker's bankruptcy estate therefore had no legal or equitable interest in the Real Property as of the Petition Date, and the Real Property is therefore not property of her bankruptcy estate under 11 U.S.C. § 541.

---

[128] ECF No. 15 at 2, n.2; ECF No. 32 at 2, n.2; ECF No. 42 at 2, n.2.
[129] *See Novoferreiro v. Israel*, No. 14-CIV-62674, 2015 WL 2152682, at *5 (S.D. Fla. May 6, 2015) (collecting cases). The Court does note, however, that if there was a basis to attack the sale, only a trustee – and not a chapter 13 debtor – could bring an action to avoid a transfer under Chapter 5 of the Bankruptcy Code. *See* 11 U.S.C. §§ 544–553, 1303; *see also In re Richardson*, 311 B.R. 302 (Bankr. S.D. Fla. 2004), *amended* (June 21, 2004).

Patrick's Custom Painting, on the other hand, had a legal entitlement to issuance of the Sheriff's Deed as of the Petition Date. By delivering the deed – a statutory, ministerial act over which the sheriff had no discretion – neither Sheriff Tony nor Patrick's Custom Painting nor FARC violated the automatic stay of 11 U.S.C. § 362(a). Delivery of the Sheriff's Deed was not an act to exercise control over property of the estate, because the estate had no legal or equitable interest in the Real Property. Likewise, the sheriff's issuance of the deed was not an act to collect a prepetition debt or to enforce a prepetition lien. All acts by FARC to collect its prepetition debt were completed upon conclusion of the execution sale and Patrick's Custom Painting's payment of the purchase price and related costs. And, having constructively received the deed at the conclusion of the execution sale, and having properly received the actual, physical Sheriff's Deed without running afoul of the automatic stay, Patrick's Custom Painting has complete legal and equitable title to the Real Property.

Accordingly, for the reasons discussed above, it is **ORDERED** that:

1.      The Motion is **DENIED**.

2.      The Real Property located at 2861 SW 88th Avenue, Miramar, Florida 33325 is not property of the bankruptcy estate of Debtor Karlene S. Parker.

3.      Neither FARC, Patrick's Custom Painting, nor Broward County Sheriff Gregory Tony, violated the automatic stay with respect to the issuance of the Sheriff's Deed to Patrick's Custom Painting on January 27, 2021.

# # #

28

Copies furnished to:

All interested parties by the Clerk of Court